IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDY LUNDY,<br><br>   Plaintiff,<br><br>v.<br><br>HL MOTOR GROUP, INC., HIGHLIGHT MOTOR FREIGHT USA, INC., OLD REPUBLIC INSURANCE COMPANY, AND OGNJEN MILANOVIC,<br><br>   Defendants. | Case No.: CIV-22-699-F |
| FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE,<br><br>   Plaintiff,<br><br>v.<br><br>HL MOTOR GROUP, INC. and OGNJEN MILANOVIC,<br><br>   Defendants. | Case No.:  CIV-22-752-F |

**PLAINTIFF FARMERS MUTUAL FIRE INSURANCE COMPANY
OF OKARCHE'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Plaintiff Farmers Mutual Fire Insurance Company of Okarche ("FMFICO"), pursuant to Fed.R.Civ.P. 56 and LCvR 56.1 respectfully moves for summary judgment against all Defendants.  Among the other reasons for the grant of summary judgment discussed below, Defendant HL Motor Group ("HL") expressly admits that it was ***"not possible"*** for Defendant Ognjen Milanovic to have lost control due to dehydration, the only theory advanced by Defendants to avoid liability.

1

## INTRODUCTION

On August 8, 2020, Defendant Ognjen Milanovic ("Milanovic") was driving a semi tractor trailer, owned by HL on the Kilpatrick Turnpike in Canadian County, Oklahoma, within the scope and course of his employment with HL.  Milanovic negligently drove his truck off the highway.  He slammed into two properties, homes owned by Earlene Carr and Randy Lundy.

At the time of the collision, Ms. Carr was insured under a policy of homeowners insurance issued by FMFICO.  FMFICO has made payments to Ms. Carr under the policy in the amount of $137,472.83.  Lundy's property damage is, at least, $168,273.83.  In addition, Lundy asserts loss of income of $28,850.00.

Despite the express admissions that dehydration is "absolutely preventable" and "not possible" in the instant case, Defendants retained a medical expert who opined that Milanovic suffered from dehydration, a "heat-related illness," which caused him to pass out and crash into the homes.  The expert's opinion suffers from a variety of terminal issues, including failure to consider what Milanovic's standard levels are, whether sleep or distraction is a more likely cause, the key lab results are barely outside the normal range, and others are within the normal range that should not be in cases of dehydration.  Compare **EXHIBIT 1**, Expert Report, with **EXHIBIT 2,** Medical Records; **EXHIBIT 3,** National Kidney Foundation, https://www.kidney.org/blog/ask-doctor/can-dehydration-cause-creatinine-rise-if-so-what-factor; and Mayo Clinic Blood Urea Nitrogen (BUN) Test, https://www.mayoclinic.org/tests-procedures/blood-urea-nitrogen/about/pac-20384821.

Regardless, even if Milanovic suffered from dehydration, it was a wholly known and preventable condition that would have been avoided had Defendants acted reasonably rather than negligently. As a result, they are undisputedly liable, and summary judgment should be entered here in favor of FMFICO.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On August 8, 2020, Milanovic was driving a semi tractor trailer, owned by the Defendant, HL, on the Kilpatrick Turnpike in Canadian County, Oklahoma. **EXHIBIT 4,** Police Report; Joint Status Report (Doc. 16).

2. Milanovic drove off of the turnpike and collided with houses belonging to Lundy and Carr. *Id.*

3. Milanovic was acting in the course of employment with HL at the time the accident occurred. Joint Status Report (Doc. 16); **EXHIBIT 5**, Deposition of HL Corporate Representative, 40:6-8.[1]

4. Carr was insured by FMFICO, which paid for damages to her home in the amount of $137,472.83. **EXHIBIT 6,** Declarations Page; **EXHIBIT 7,** Loss Report. Defendants have acknowledged that they do not contest the accuracy of this damages figure. **EXHIBIT 5,** 19:18-25.

---

[1] Alexander Saitov was presented and deposed as HL's corporate representative, pursuant to Fed.R.Civ.P. 30 and a deposition notice identifying the topics upon which he testified. **EXHIBIT 5,** 8:9-18, 12:15-19; 18:1-21:25; Corporate Representative Deposition Notice (Doc. 20).

5. The only medical condition Defendants identify as an explanation for Milanovic to purportedly lose consciousness while driving and run his 18-wheeler off the highway and crash into the homes is dehydration, a "heat-related illness." **EXHIBIT 1**.

6. HL cannot affirmatively testify as to the cause of the accident. **EXHIBIT 5**, 33:13-35:12. However, HL expressly rejects dehydration as a potential cause:

> Q …you do not believe that he succumbed to dehydration, to the extent that he lost consciousness and ran off the roadway; right?
> A I don't believe that he succumbed to, specifically to the reason of dehydration.
> Q Okay.
> A Because of dehydration.
> Q You believe that makes no practical sense to you?
> A Correct.
> Q As the safety manager and/or vice-president of safety for this company for some eight plus years; right?
> A I think practically he took a rest break of forty-five minutes, which is more than enough for him to drink water, eat properly. And I don't believe that he taking rest -- that rest break, wouldn't be able to do it.
> Q Would common sense, and I know you are not a medical doctor, but would common sense, if dehydration was the medical condition that caused him to lose consciousness, if that's true, okay, do you believe, in your experience in life and as the safety manager for this company, that it's possible for a person to succumb to dehydration at such a fast rate, that the very first sign of a problem was the loss of consciousness?
> A Sir, for all of my experience, and I think I've had a relatively large experience with a large number of accidents, I never, ever observed weakness that dehydration played any such role.
> Q In causing a driver to lose consciousness and have a collision?
> A Yes.
> Q All right. And you make a good point. I mean, you've probably investigated hundreds of accidents, a thousand or more?
> A I don't know the exact number. But from my experience, I knew cases where drivers were able to travel with not working AC and they were able to travel large distances. And it didn't lead to the loss of -- their ability to operate commercial vehicle was not impaired to such -- to such a level, where they lost consciousness and lost control of their vehicle.

...

> Q   Well, you make me pause and ask this, then.  You are telling me that you have seen situations where drivers operate on hot days with not fully functioning air-conditioning units.
> A   Yeah.
> Q   And, yet, that didn't lead to, wasn't a contributing cause, to the collision, is that what you are telling us?
> A   Yes.

*Id.,* 58:4-60:5.

> A   My explanation is that, specifically in case of Ognjen Milanovic, looking at his logbook, took a restroom break three hours before the accident, it's not -- it's not possible in his situation, because he had three hours before that took a rest break of forty-five minutes, as I see on his logbook. And for me, three hours of driving is not enough to get to such a level of dehydration, that he would be able to lose control, lose consciousness, lose control of his vehicle. 3 Maybe in some other case it's plausible, with some other guy, who probably, possibly drove without the rest break, not three hours, but let's say, I don't know, fifteen hours. But in his case, in his specific case, where we know exactly that he took a break three hours before the accident, that is not plaus -- it's not possible.

*Id.,* 56:18-57:9.

7. HL admits that its drivers are responsible for ensuring they are hydrated at all times to avoid any negative health consequences of dehydration, that might impair the ability to drive.  **EXHIBIT 5**, 51:13-17.

8. HL admits that Milanovic could have prevented any dehydration that could have occurred.

> Q   All right. And do you agree that an extreme level of dehydration would be a preventable circumstance by the driver?
> A   I would agree.
> Q   If a person had dehydration to the extent that they lost consciousness, you would agree that would be preventable by the truck driver?
> A   I would agree.

**EXHIBIT 5**, 49:18-24.

5

> Q That's my question to you. If the driver becomes dehydrated and that's the reason he lost consciousness, that is a self-induced medical condition; agree?
> A Agree.
> Q Entirely preventable by the driver?
> A Absolutely preventable.

*Id.,* 53:7-13.

> Q So if a driver is feeling fatigued or dizzy due to dehydration, brought about by the absence of fluids and/or the rising temperatures in his truck, those are preventable factors; correct?
> A Correct.

*Id.*, 53:22-54:4.

    9.    Milanovic admits that an accident resulting from dehydration was something preventable and under his control.

> Q If you're fatigued and dehydrated, I suppose you could pass out and lose consciousness, right?
> A Yes.
> Q But fatigue and dehydration would be something within your control. You agree with that?
> A Sure.

Plaintiff's Deposition, **EXHIBIT 8**, 114:14-20.

> Q Okay. Well, I'm just trying to figure out, are -- are you saying you were not feeling fatigued or you were not dehydrated, or are you simply saying you don't recall feeling either of those things?
> A I don't -- if I had felt that, which I have in the past, I would have done something about it, but I don't remember feeling that.

*Id.,* 116:13:19.

    10.    Both defendants agree that fluids were easily available to Milanovic.

> Q Regarding your practices, would -- would it be your practice -- if you -- if you pulled over to get something to drink, would -- would it be your practice to buy, like, I don't know, a case of water, a case of Gatorade, a –

6

> A   Yeah. Yeah. Always. Always. There's some on the side, so, yeah, always. How many depends on the day, you know.

**EXHIBIT 8**, 110:9-16.

> A   I think practically he took a rest break of forty-five minutes, which is more than enough for him to drink water, eat properly. And I don't believe that he taking rest -- that rest break, wouldn't be able to do it.

**EXHIBIT 5**, 58:17-21.

11. Milanovic states that the air-conditioning in the semi was not working properly. **EXHIBIT 8**, 111:17-23.

12. Milanovic did not report the faulty air-conditioning.

**EXHIBIT 5**, 62:2.

13. Milanovic admits that it was his "job" to stay hydrated while he drove.

**EXHIBIT 8**, 112:14-25.

14. Milanovic admits it is not safe to drive without air-conditioning in hot temperatures and that he should have pulled over.

> Q   And that if it's not safe to drive because you're dehydrated or because your equipment lacks sufficient air conditioning, it's your job to pull over until those situations can be remedied, right?
> A   I would agree with you there.
> Q   All right. You can't just keep driving if you're dehydrated or hot and tired. You understand that?
> A   Yes.
> Q   Because if you do, accidents like this can happen. Agree?
> A   Agree.

**EXHIBIT 8**, 112:14-25.

7

15. HL admits it could have repaired the air-conditioner. **EXHIBIT 5**, 53:21-24 ("Q: Okay. You agree with me, that would also be a preventable factor; right, sir? A: In terms of repair of conditioner, yes.").

16. HL is responsible for ensuring operating air-conditioning in its vehicles and that it is unacceptable for a driver to operate such a vehicle in excessive temperatures.

> Q All right. So is HL responsible for ensuring that the AC units in its big rigs are functioning properly?
> A Correct.

**EXHIBIT 5**, 61:5-8.

> Q All right. Is it -- is it acceptable to HL, that a driver from northern climates, on his very first trip for HL into the south in the hot summer months, drove ten plus hours on a ninety plus degree day with a poorly performing air-conditioning unit in his truck and did not report that to the company?
> A Yeah. That's -- that's not acceptable.

*Id.,* 62:13-19.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment must offer evidence of specific facts, in admissible form, sufficient to raise "a genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). Conclusory allegations or denials do not suffice. *Id.* at 248. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007). "Because [the] defendant does not bear

the ultimate burden of persuasion at trial…defendant 'may meet its burden by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Salazar v. Contract Freighters, Inc.*, No. 18-CV-651-GKF-JFJ, 2019 WL 7605822, at *1 (N.D. Okla. Oct. 4, 2019).

## ARGUMENT AND AUTHORITIES

Defendants are facing an insurmountable obstacle. No matter which path they choose, they cannot succeed. Negligence requires three elements must be established: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to perform that duty; and (3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care. *MeGee v. El Patio, LLC*, 2023 OK 14, ¶ 6, 524 P.3d 1283, 1285*, citing Smith v. City of Stillwater*, 2014 OK 42, ¶ 22, 328 P.3d 1192, 1200. Plaintiff can clearly establish the existence of these three elements in the instant case, no matter which path Defendants follow.

    **I.**    **Defendants are Plainly Negligent, and Defendants Cannot Establish the Sudden Emergency Defense.**

It is undisputed that a driver owes a duty of care. "Concerning duty of care, a driver of a motor vehicle must, at all times, use that degree of care which is reasonable and prudent under the circumstances." *Dirickson v. Mings*, 1996 OK 2, 910 P.2d 1015, 1018; *CTC, Inc. v. Schneider Nat'l Inc.*, CIV-20-1235-F, 2021 WL 5815833, at *2 (W.D. Okla. Dec. 7, 2021) (quoting same). "Therefore, a failure to exercise that degree of care which results in injury to another is actionable negligence." *Id.* Milanovic drove off of the turnpike and collided with houses belonging to Lundy and Carr, while in his scope of employment for

9

HL.  UMF 1-3.  There is no dispute as to Milanovic's breach of the duty, and Defendants have even stipulated to the amount of damages.  UMF 2-4.

Defendants' only option is to argue that an affirmative defense exists, which excuses Milanovic's conduct.  *See* Answer, at 3-4.

> Unavoidable accident by reason of sudden incapacitating illness or unconsciousness, if not foreseeable, is a defense to negligence. In order for defendant to be relieved of liability for negligence based on this affirmative defense, the defendant must prove the sudden unconsciousness that caused the accident and that the attack was not foreseeable. *Parker v. Washington*, 421 P.2d 861, 866 (Okla.1966). Thus, the burden of proof is on the defendant to introduce affirmative proof of every element of his affirmative defense of unavoidable accident.

*Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 314.  Defendants advance a sole theory of defense by way of a medical opinion submitted by Defendants' expert, contending, in wholly conclusory fashion, that Milanovic was dehydrated and consequently passed out at the wheel.  Thus, Milanovic and his employer contend they should be legally excused from the undisputed damages caused by the truck because the driver succumbed to dehydration.  However, even assuming the plausibility that a medically dehydrated truck driver would go from asymptomatic to instantaneously unconscious – a proposition HL's safety director agrees is simply "not possible" – Defendants' expert's report fails to establish the requisite conditions for the defense.

In *Morris v. Crete Carrier Corp.*, CIV-04-888-T, 2006 WL 8436330, at *2 (W.D. Okla. Jan. 20, 2006), Judge Thompson opined:

> [W]hile Defendants have submitted evidence that Mr. Gentry was unaware that he had the condition of hypertrophic cardiomyopathy prior to his death and had not had the test necessary to diagnose that condition, an

10

> echocardiogram…this evidence is insufficient to show a necessary element of the defense of unavoidable accident due to a sudden medical event—that the attack of sudden unconsciousness was unforeseeable or that Mr. Gentry was not aware of any condition he had which rendered him subject to an attack of unconsciousness. *See Bowers v. Wimberly*, 933 P.2d 312, 314 (Okla. 1997); *Parker*, 421 P.2d at 866. Thus, the Court concludes that Defendants failed to meet their initial burden of submitting evidence establishing the essential elements of their affirmative defense and showing the absence of genuine issues of material fact concerning that defense.

The report here similarly fails to establish that Milanovic did not fall asleep, that he was not distracted or that complete unconsciousness as the result of dehydration was unforeseeable. UMF 5, **EXHIBIT 4.**

Regardless, Milanovic and HL both expressly acknowledge that dehydration is something that was completely under Milanovic's control. UMF 7-10. Both agree that Milanovic should not continue to drive if he is dehydrated. UMF 8-9. Both acknowledged the availability of fluids to prevent dehydration. UMF 10. Milanovic even testified that it was his job to stay hydrated and that he had been dehydrated before but did not have any such symptoms at the time of the accident. UMF 9-13. In short, Defendants cannot possibly establish that dehydration was an unforeseeable cause of an accident, as required for the proffered defense.

Regardless, HL's own admission fatally contradicts the report. HL, through its corporate representative, expressly stated that it was "***not possible***" for Milanovic to be dehydrated at the time of the collision. UMF 6 ("I don't believe that [Milanovic] succumbed to, specifically to the reason of dehydration."). No conclusory medical report can overcome a party's own express admission.

## II. Even if the Collision was the Result of Dehydration, Defendants are Undisputedly Negligent.

Assuming (despite clear evidence and testimony to the contrary) that Milanovic did suffer from dehydration leading to the collision, Defendants have still acted negligently to cause the damage to the homes.

> Under Oklahoma law, proximate cause is defined as that which, in the natural and continuous sequence, produces the plaintiff's injury, and without which the injury would not have happened. *Dirickson v. Mings*, 910 P. 2d 1015, 1018–1019 (Okla. 1996); *Tomlinson v. Love's Country Stores*, 854 P. 2d 910, 916 (Okla. 1993). An injury may have more than one proximate cause. *Kirkpatrick v. Chrysler Corp.*, 920 P. 2d 122, 126 (Okla. 1996). Multiple defendants may be liable as joint tortfeasors if each defendant's negligence is found to be a proximate cause of a plaintiff's injury. *Woolard v. JLG Industries, Inc.*, 210 F. 3d 1158 (10th Cir. 2000).

*Wallace v. Ormsby Trucking, Inc.*, CIV-04-1312-R, 2006 WL 8436367, at *3 (W.D. Okla. Sept. 11, 2006). Here, adopting for argument's sake, Defendants' theory that Milanovic passed out from dehydration prior to the collision, two related actions (or lack thereof) of Defendants were the cause of the collision.

Milanovic states that the air-conditioning was not working properly. UMF 11. HL acknowledges that it is responsible for the air-conditioning in its trucks. UMF 15-16. HL also agrees it is responsible for Milanovic's negligence in the scope of his duties. UMF 3. Milanovic did not report the air-conditioning issue to HL, something that is simply unacceptable. UMF 16. The air-conditioner could have been repaired. UMF 15. The purported dehydration was due to a "heat-related illness." UMF 5. In short, Defendants have admitted all the necessary elements to establish that the failure to report/repair the air-conditioner, and continuing to drive in hot temperatures without air-conditioning were

12

negligent acts in and of themselves. As a result, summary judgment in Plaintiff's favor is appropriate.

Moreover, regardless of the responsibility for reporting and repairing the air-conditioner, dehydration arising from insufficient fluid intake was a wholly foreseeable and preventable condition. UMF 6, 8-9. HL admits that its drivers are responsible for ensuring they are hydrated at all times to avoid any negative health consequences of dehydration, that might impair the ability to drive. UMF 7. HL admits that Milanovic could have prevented any dehydration that could have occurred. UMF 8. Milanovic admits that an accident resulting from dehydration was something preventable and under his control. UMF 9. Both Defendants agree that fluids were easily available to Milanovic. UMF 10. In short, Defendants admit dehydration from lack of fluids was wholly foreseeable and absolutely preventable. Nonetheless, assuming Milanovic failed to stay hydrated, he was clearly negligent and thus his negligent acts are imputed to his employer.

## CONCLUSION

For the reasons set forth herein, Plaintiff Farmers Mutual Fire Insurance Company of Okarche requests the Court enter judgment in its favor and against Defendants.

Respectfully Submitted,

s/ Matthew C. Kane
Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
(405) 239-6040
(405) 239-6766 FAX
jerry@ryanwhaley.com
mkane@ryanwhaley.com

*Attorneys for Plaintiff*
*Farmers Mutual Fire Insurance Company*
*Of Okarche*

## CERTIFICATE OF SERVICE

☑    I hereby certify that on May 22, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Michael T. Franz, Esquire
Jeremy K. Schrag, Esquire
Rodney Stewart, Esquire

s/ Matthew C. Kane
For the Firm