IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDY LUNDY, | |
| Plaintiff, | |
| v. | Case No: 5:22-CV-00699-F |
| HL MOTOR GROUP, INC., et al., | |
| Defendants. | |
| FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE, | |
| Plaintiff, | |
| v. | Case No: 5:22-CV-00752-F |
| HL MOTOR GROUP, INC., et al., | |
| Defendants. | |

## **DEFENDANTS' MOTION IN LIMINE AND MEMORANDUM IN SUPPORT**

Defendants, HL Motor Group, Inc. ("Highlight"), Ognjen Milanovic ("Mr. Milanovic") and Old Republic Insurance Company, pursuant to the Federal Rules of Evidence, in support of their Motion in Limine to preclude plaintiffs from presenting lay opinion medical testimony and inadmissible evidence before the jury at any time:

It is anticipated that plaintiffs will attempt to introduce trial evidence similar to that offered in their Motions for Summary Judgment. However, because such evidence would violate well-established law and evidentiary rules, defendants request the in limine exclusion of any such evidence.

I.    **Standard.**

"The purpose of a motion in limine is to aid the trial process by enabling the Court

to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that

are definitely set for trial, without lengthy argument at, or interruption of, the trial."

*Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008).

"Motions in limine may be used either to exclude or admit evidence in advance of

trial." *United States v. Larkin*, No. 12–CR–319, 2015 WL 3555295, at *2  (D.Nev. June 5,

2015). However, "a court is almost always better situated during actual trial to assess the

value and utility of evidence." *Id.* (citation omitted).  For this reason, some courts defer

making in limine rulings unless the "evidence is clearly inadmissible on all potential

grounds." *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F.Supp. 1398, 1400

(N.D.Ill. 1993) ("Unless evidence meets this high standard, evidentiary rulings should be

deferred until trial so that questions of foundation, relevancy and potential prejudice may

be resolved in proper context."); *see also, Wright v. Burlington Northern Santa Fe Ry.*, No.

4:13-CV-24-JED-FHM, 2016 U.S. Dist. LEXIS 54029, at *1-2 (N.D. Okla. Apr. 22, 2016).

In Oklahoma, the unavoidable accident defense is recognized as a complete defense

to negligence. *Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 314 (Okla. 1997)

("Unavoidable accident by reason of sudden incapacitating illness or unconsciousness, if

not foreseeable, is a defense to negligence.").  This affirmative defense is available when

"an operator of a motor vehicle, who, while driving, becomes suddenly stricken by a

fainting spell or loses consciousness from an unforeseen cause, and is unable to control the

vehicle." *Id.* (quoting *Parker v. Washington*, 421 P.2d 861, 866 (Okla. 1966)).

II.     **Factual Context.** [1]

On August 8, 2020, Mr. Milanovic, while employed by Highlight, was driving a tractor-trailer owned by his employer on the Kilpatrick Turnpike in Oklahoma City, Oklahoma.  At approximately 4:19 p.m., Mr. Milanovic's tractor-trailer left the roadway and collided with residential property owned by Randy Lundy (Lundy) and Earlene Carr. Lundy and Ms. Carr's insurer, Farmers Mutual Fire Insurance Company of Okarche, filed suit claiming Mr. Milanovic was negligent in driving his tractor-trailer off the roadway. Plaintiffs further claimed that Highlight is liable for Mr. Milanovic's negligent conduct under the doctrine of respondeat superior.  Mr. Milanovic and Highlight contend they are not liable to Lundy or Farmers, and assert the affirmative defense of unavoidable accident due to a sudden incapacitating illness or unconsciousness.

In support of the unavoidable accident defense, defendants disclosed David J. Fletcher, M.D., who will testify as to the nature and extent of Mr. Milanovic's sudden loss of consciousness. Plaintiffs disclosed no expert to rebut the opinion of Dr. Fletcher. Instead, at summary judgment, plaintiffs attempted to contradict Dr. Fletcher's opinion and show that Mr. Milanovic's condition was foreseeable by relying on: webpage printouts from the National Kidney Foundation and WebMd.com; hearsay evidence in an Oklahoma Traffic Collision Report; and, deposition testimony from a Highlight's Safety Director, who is not a medical professional.  Defendants anticipate that plaintiffs will attempt to offer the same evidence at trial.

---

[1]Defendants submit this Motion mindful of local chambers rules requiring limine motions to "provide the factual context" necessary for resolution of the motion.

III.   **The Court Should Prohibit Any Attempt To Elicit Expert Medical Testimony From Trooper Wayne Linzy.**

Plaintiffs submitted an Oklahoma Traffic Collision Report and an Affidavit authored by Patrolman Wayne Linzy in support of their Motions for Summary Judgment and on their Trial Exhibit Lists.  (*See* Exhibits 1 and 2).  They also named Patrolman Linzy as a witness to be called at trial.  (*See* Exhibits 3 and 4).  Notably, plaintiffs did not disclose Patrolman Linzy, who was never deposed, as an expert witness.

Presumably, Patrolman Linzy is not a medical doctor, neurologist or neuroscientist nor does he have medical experience regarding how the body arouses from various states of consciousness.  [Farmers Mutual Doc. 29-7]. Despite his lack of expertise, Patrolman Linzy attested that people who fall asleep arise suddenly and alertly but people who lose consciousness arise in a fog [Farmers Mutual Doc. 29-7, at pp. 3-4] and Mr. Milanovic likely fell asleep because his semitruck came to rest between two houses instead of striking one house directly.  [Doc. 29-7, at pp. 5] Patrolman Linzy further speculated that Mr. Milanovic suddenly regained consciousness and alertness based on where the semitruck came to rest. [Doc. 29-7, at pp. 5]. This testimony should be excluded because Patrolman Linzy is unqualified to render Rule 702 testimony and his Rule 701 testimony is improper speculation.

Rule 701(a) requires that lay opinion testimony be "rationally based on the witness' perception." Fed. R. Evid. 701(a); see also id. R. 701(a) advisory committee's note (1972) (stating that the Rule incorporates the requirement of "first-hand knowledge or observation").

"The perception requirement stems from Rule 602 of the Federal Rules of Evidence[,] which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact." *Magoffe v. JLG Indus., Inc.*, 375 F. App'x 848, 859 (10th Cir. 2010) (alteration and internal quotation marks omitted); see Fed. R. Evid. 602 ("Need for Personal Knowledge").

In a similar case, the Tenth Circuit affirmed the Utah District Court that struck a medical expert's testimony that the defendant driver had a seizure and was involved in a wreck because the doctor's opinion was unsupported speculation. *Solorio v. United States*, 228 F.Supp.2d 1280, 1285 (D. Utah 2002).

In *Solorio*, all parties agreed the defendant driver had a seizure and the dispute was over whether the seizure caused the accident or was caused by the accident. In support of the argument that the seizure was caused by the accident, plaintiff disclosed a board-certified neurologist who opined that he was 99.99% certain the accident caused the seizure. But his opinion was not supported by any case studies or research. *Id.* at 1284-1285. The district court struck the expert testimony concluding that the neurologist's opinion was "no more than a subjective belief or unsupported speculation." *Id.* at 1285, *aff'd* 85 F. App'x 705.

The solicited testimony here is more offensive. Instead of offering a board-certified neurologist, Plaintiffs offer a non-medical professional to testify based on a solely subjective belief that Mr. Milanovic was conscious at the time of the accident. Besides being unqualified under Rule 702, Patrolman Linzy's testimony is also pure speculation. Moreover, Patrolman Linzy is not a fact witness because, at the time of the accident, he

was not present with Mr. Milanovic.  In short, Patrolman Linzy has no first-hand knowledge as to Mr. Milanovic's consciousness.  His testimony is unduly speculative under Rule 701.  *See Magoffe*, 375 F. App'x at 859; *Smith v. BNSF Ry. Co.*, No. CIV-08-1203-D, 2011 U.S. Dist. LEXIS 118968, 2011 WL 4346341, at *7 (W.D. Okla. Sept. 15, 2011) ("[A] lay witness's opinion testimony [that] constitutes speculation as to what might have been done or what might have occurred is not based on his first-hand perception of actual events.).  In addition to not being disclosed under Rule 26(b)(2), Patrolman Linzy's testimony is also improper Rule 702 testimony.  He has no medical experience how the body arouses from various states of consciousness and his opinion is not based on any reliable scientific method or process.  Pursuant to both Rule 701 and Rule 702, Patrolman Linzy should be precluded from testifying as to Mr. Milanovic's state of consciousness or alertness.

**IV.**   **The Court Should Prohibit Any Attempt To Elicit Expert Medical Testimony From Defendant's Safety Manager, Alexander Saitov.**

Plaintiffs submitted the evidence deposition transcript of Defendant's Vice President of Safety and Compliance, Alexander Saitov, in support of their Motions for Summary Judgment and named Mr. Saitov as a witness to be called at trial.  (*See* Exhibits 3 and 4).  Notably, plaintiffs did not disclose Mr. Saitov as an expert witness.  Plaintiffs will presumably attempt to offer Mr. Saitov's deposition testimony that dehydration is a self-induced preventable condition and it was not possible that Mr. Milanovic had no symptoms of dehydration until he lost consciousness. However, neither opinion is admissible.

Mr. Saitov is a safety manager for Defendant.  [Farmers Mutual Doc. 23-5, at 7:4-11].  This was his first time addressing a situation in which a driver blacked out or lost consciousness.  [Doc. 23-5, at 12:10-14.] He is not a doctor.  He has no medical training.  While Mr. Saitov may have an opinion on what causes dehydration, the opinion is not admissible.  Similar to Patrolman Linzy, Mr. Saitov was not present for nor does he have first-hand knowledge of Mr. Milanovic's fluid intake before the accident.  As a lay person, Mr. Saitov should not be allowed to speculate on whether Mr. Milanovic was suffering symptoms of dehydration prior to the accident.   See *Smith*, 2011 U.S. Dist. LEXIS 118968, at *7.

Moreover, Mr. Saitov has no knowledge of what causes the medical condition of dehydration or whether dehydration is foreseeable. "Oklahoma law generally requires expert testimony for complex issues of medical causation." *Hall v. Conoco Inc.*, 886 F.3d 1308, 1317 (10th Cir. 2018). The onset of dehydration symptoms requires informed expert testimony.  Mr. Saitov's uninformed speculation on this issue is inadmissible because he is not a medical expert.  As such, Mr. Saitov should be precluded from testifying that dehydration is a self-induced preventable condition or speculate as to Mr. Milanovic's state of hydration and loss of consciousness.

**V.**     <u>**Exhibits From the National Kidney Foundation and WebMD.**</u>[2]

Pursuant to Rule 26(2)(B), defendants disclosed David J. Fletcher, MD MPH, as a retained expert witness.  In support of Defendants' Motions for Summary Judgment, Dr. Fletcher offered attested and opined that at "the time of the accident, Mr. Milanovic suddenly and without warning became unconscious and incapacitated as a result of dehydration at temperatures in excess of $90^O$F, causing a classic heat-related acute illness and loss of consciousness." [Farmers Mutual Doc. 25-6, at 4].

Without disclosing any expert witness, plaintiffs attempted to contradict Dr. Fletcher's testimony by relying on a never disclosed 2013 Question and Answer webpage from the National Kidney Foundation [Farmers Mutual Doc. 29-4, at 2] and printout from the Mayo Clinic [Doc. 29-4, at 3-9.].  But webpages – especially webpages without known authors – are inadmissible evidence for multitude reasons.  First, both webpages cannot be authenticated.  *See United States v. Isabella,* 918 F.3d 816, 843 (10th Cir. 2019) ("[T]he mere fact that a page with [the defendant's] name and photograph happened to exist on the Internet at the time of [the investigating agent's] testimony does not permit a reasonable conclusion that this page was created by the defendant or on his behalf.") *quoting United States v. Vayner*, 769 F.3d 125, 131 (2nd Cir. 2014).   The inauthentic webpages are inadmissible under Rule 901.

---

[2]Although not included on either plaintiffs Trial Exhibit List, plaintiffs may seek to use these documents upon cross-examination of Dr. Fletcher.

Second, the webpages are hearsay from unknown declarants.  *See United States v. Iverson,* 818 F.3d 1015, 1021 (10th Cir. 2016) (webpage offered for the truth of the matter asserted was hearsay).  At summary judgment, plaintiffs offered the webpage content for the truth of the matter asserted, *e.g.*, that Mr. Milanovic's kidney and creatine levels were normal.   [Farmers Mutual Doc. 29, at 6-7].  Because the authors of webpages are unidentified and not listed as witnesses in any disclosure, the webpages are classic inadmissible hearsay.  *See Turner v. Phillips 66 Co.,* No. 18-CV-00198-GKF-FHM, 2019 U.S. Dist. LEXIS 54139, at *19 (N.D.Okla. Mar. 29, 2019) ("With respect to the two internet articles—the first from Sudafed.com and the second from WebMd—the court concurs with Phillips 66 that the articles constitute inadmissible hearsay.").

Finally, the webpages are inappropriate because they require expert testimony.  Medical lab results including creatine levels, kidney levels and evidence of dehydration are all subjects of expert medical testimony.  The mechanisms of dehydration and the results of medical labs are outside the scope of lay testimony.  *Derrick v. Std. Nutrition Co.,* 829 F. App'x 857, 861 (10th Cir. 2020) (affirming district court's order that a Rule 701 witness may not "speculate about the meaning of the lab results").  As explained above, plaintiffs disclosed no expert witness.  The webpages are also improper under Rule 702 because the webpages may not serve as a surrogate for nondisclosed expert testimony.

## VI.    __Conclusion.__

At trial, it is anticipated that plaintiffs will attempt to introduce evidence similar to that presented in their Motions for Summary Judgment.  However, such offered testimony and exhibits violate this Court's well-established rules regarding the boundaries of Rule 701 and lay witness testimony. Neither Highlight's Safety Director nor a highway patrolmen are qualified to provide testimony on the cause and effects of dehydration, let alone Mr. Milanovic's sudden loss of consciousness.  Moreover, unauthenticated hearsay webpages are inadmissible for any purpose.  Because plaintiffs offer testimony and exhibits contrary to the Federal Rules of Evidence, defendants ask this Court to exclude any such evidence.

Respectfully submitted,

HL Motor Group, Inc., Ognjen Milanovic and Old Republic Insurance Company,

Jeremy K. Schrag                                              By: /s/ *Michael T. Franz*
Michael T. Franz                                                     One of Defendants' Attorneys
Lewis Brisbois Bisgaard & Smith LLP
550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3329
Michael.Franz@lewisbrisbois.com

Date: August 18, 2023

*Attorneys for Defendants*

75944-45