IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE,<br><br>      Plaintiff,<br><br>v.<br><br>HL MOTOR GROUP, INC. and OGNJEN MILANOVIC,<br><br>      Defendants. | Case No: CIV-22-752-F |

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff Farmers Mutual Fire Insurance Company of Okarche ("Farmers Mutual") respectfully submits the instant Trial Brief.

## Introduction

This case is as simple as one gets. On August 8, 2020, Defendant Ognjen Milanovic ("Milanovic") was driving a semi tractor trailer, owned by HL Motor Group, Inc. ("HL") on the Kilpatrick Turnpike in Canadian County, Oklahoma, within the scope and course of his employment with HL. Milanovic negligently drove his truck off the highway. He slammed into two properties, including a home owned by Earlene Carr.

At the time of the collision, Ms. Carr was insured under a policy of homeowners insurance issued by Farmers Mutual. Farmers Mutual has made payments to Ms. Carr under the policy in the amount of $137,472.83.

1

Despite the express admissions that dehydration is "absolutely preventable" and "not possible" in the instant case, Defendants retained a medical expert who opined that Milanovic suffered from dehydration, a "heat-related illness," which caused him to pass out and crash into the homes. The expert's opinion suffers from a variety of terminal issues, including failure to consider what Milanovic's standard levels are, whether sleep or distraction is a more likely cause, the key lab results are barely outside the normal range, and others are within the normal range that should not be in cases of dehydration.

Regardless, even if Milanovic suffered from dehydration, it was a wholly known and preventable condition that would have been avoided had Defendants acted reasonably rather than negligently. Defendants' likelihood of success at trial is non-existent.

## The Parties' Roles

Farmers Mutual performed its contractual duty and paid Ms. Carr for the damages that resulted from Milanovic's negligence. Farmers Mutual is now the Plaintiff in this case so that it can recover the amounts it has paid Ms. Carr. *Republic Underwriters Ins. Co. v. Fire Ins. Exch.*, 1982 OK 67, ¶ 6, 655 P.2d 544, 546; *Steadfast Ins. Co. v. Agric. Ins. Co.*, 475 Fed. Appx. 683, 688 (10th Cir. 2012), *certified question answered, Steadfast Ins. Co. v. Agric. Ins. Co.*, 2013 OK 63, 304 P.3d 747.

HL Motor was Milanovic's employer. As Defendants have admitted, Milanovic was in the scope of his employment at the time of the accident, thus HL Motor is vicariously liable for such conduct. *Barnes v. W. Exp., Inc.*, CIV-14-574-R, 2015 WL 2131353, at *1 (W.D. Okla. May 7, 2015) (defendants "stipulated that their respective driver was acting

within the scope of employment at the time of the accident, thereby admitting vicarious liability in the event their particular driver is found to have been negligent").

## **Milanovic Cannot Testify as to What Actually Occurred**

Milanovic cannot testify as to any details of the accident. When questioned by counsel, he repeatedly stated that he could not recall anything about the accident. For example, Milanovic testified:

> Q   What do you recall of this accident? It's a broad question and I'm intentionally asking it broad and then I'll narrow it down.
> A   Nothing.
> Q   Do you recall being taken to the hospital?
> A   No.
> Q   Do you recall anything that was said to you by any of the medical personnel in the ambulance?
> A   No.  Milanovic Transcript, **EXHIBIT 1**, 54:15-23.
>
> Q   You don't know when you lost consciousness, do you?
> A   No.
> Q   You could have lost consciousness after you made impact with the houses, couldn't you?
> A   Again, I -- I -- I have no idea when that was. All I know is I have no recollection of any of that. *Id.* at 66:5-12.
>
> Q   You told the officer that you were not aware of any medical condition that have – could have caused or should have caused your unconsciousness. Do you recall saying that?
> A   That's correct. I don't recall anything at -- at the scene. *Id.* at 67:23-68:4.

Moreover, as discussed in Plaintiff's Motions in Limine, Milanovic cannot testify as to vague hearsay statements that he contended were made to the investigating officer or medical professionals that would support any theory of sudden emergency.

**Defendants Testified that Dehydration Cannot Possibly be the Cause of the Accident**

HL Motor, through its corporate representative, has expressly admitted that it was "***not possible***" for Milanovic to be dehydrated at the time of the collision. Corporate Representative Transcript, **EXHIBIT 2,** 57:9. HL Motor has further admitted:

> A.   I don't believe that [Milanovic] succumbed to, specifically to the reason of dehydration. *Id.* at 58:7-8.
>
> A   Sir, for all of my experience, and I think I've had a relatively large experience with a large number of accidents, I never, ever observed weakness that dehydration played any such role. 59:5-8.

In addition, Milanovic has testified that his last physician determined that his medical episode "could have been due to fatigue and to dehydration or something; that it – that there was too many variables for them to pinpoint why it happened." *Id.* at 74:4-8.

**Defendants' Testimony that Dehydration is Foreseeable and Preventable**

In addition, HL Motor admitted that dehydration is wholly foreseeable and preventable.

> Q   All right. And do you agree that an extreme level of dehydration would be a preventable circumstance by the driver?
> A   I would agree. *Id.* at 49:18-21.
>
> Q   If a person had dehydration to the extent that they lost consciousness, you would agree that would be preventable by the truck driver?
> A   I would agree. *Id.* at 49:22-25.
>
> Q   And I think you have already said this, but just to be clear, do you agree that dehydration is 100 percent avoidable?
> A   Dehydration is 100 percent avoidable, yes. *Id.* at 50:22:25.
>
> Q   A driver is responsible for ensuring that he or she is properly hydrated at all times to avoid any negative health consequences of the dehydration, that might impair the ability to drive?
> A   Agree. *Id.* at 51:13-17.

| | |
|---|---|
| Q | That's my question to you. If the driver becomes dehydrated and that's the reason he lost consciousness, that is a self-induced medical condition; agree? |
| A | Agree. |
| Q | Entirely preventable by the driver? |
| A | Absolutely preventable. *Id.* at 53:7-12. |
| | |
| Q | A driver is responsible for pulling over immediately on any signs or symptoms of dehydration or other health factors that influence his ability to drive the truck safely; right? |
| A | No. |
| Q | He is not responsible for pulling over immediately among signs or symptoms that he can't properly operate the truck? |
| A | Not necessarily immediately. |
| Q | Well, as soon as he can do so safely. |
| A | As soon as he can do it safely. *Id.* at 54:5-15. |
| | |
| Q | And, in part, his dehydration was brought about by a poorly functioning air conditioner, you would agree with me that both of those things are entirely preventable by the company and/or the driver? |
| A | Again, given all -- if -- if the loss of consciousness is caused by dehydration, then, yes. *Id.* at 62:24-63:4. |

In fact, HL Motor admitted that if Milanovic were "dehydrated to the point of losing consciousness, the accident would have been his fault." *Id.* at 69:1-2.

Similarly, Milanovic testified:

| | |
|---|---|
| Q | [Y]ou understand that it's your job to stay hydrated while you drive? |
| A | Yes. |
| Q | And that if it's not safe to drive because you're dehydrated or because your equipment lacks sufficient air conditioning, it's your job to pull over until those situations can be remedied, right? |
| A | I would agree with you there. |
| Q | All right. You can't just keep driving if you're dehydrated or hot and tired. You understand that? |
| A | Yes. |
| Q | Because if you do, accidents like this can happen. Agree? |
| A | Agree. **EXHIBIT 1**, 110:11-25. |

> Q   But fatigue and dehydration would be something within your control. You agree with that?
> A   Sure.
> Q   All right. If you're feeling dehydrated, if you're feeling fatigued, it's time to pull over and stop driving. Agree?
> A   Uh-huh.
> Q   Yes?
> Q   You shouldn't keep driving if you're fatigued and dehydrated to the point that you lose consciousness and run off the roadway, right?
> A   Correct.  *Id.* at 114:18-115:5

Plainly, Defendants have admitted that Milanovic was responsible for maintaining hydration, that it was foreseeable that, if he did not stay hydrated, an accident could occur, and if the accident did occur as a result of failing to stay hydrated, it was his fault.

### Defendants Cannot Establish the Sudden Emergency Defense

Defendants rely entirely on the sudden emergency defense in their attempt to avoid liability.  As articulated in *Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 314.

> Unavoidable accident by reason of sudden incapacitating illness or unconsciousness, if not foreseeable, is a defense to negligence. In order for defendant to be relieved of liability for negligence based on this affirmative defense, the defendant must prove the sudden unconsciousness that caused the accident and that the attack was not foreseeable.

Defendants' theory is predicated on a medical opinion submitted by Defendants' expert, contending, in wholly conclusory fashion, that Milanovic was dehydrated and consequently passed out at the wheel.  Defendants' expert does not even attempt to explain any medical basis for sudden, extreme dehydration, where the individual did not "remember being fatigued or thirsty or anything like that." **EXHIBIT 1**, 116:4-6; *see also,* 116:13-19.  However, even assuming the plausibility that a medically dehydrated truck driver would go from asymptomatic to instantaneously unconscious – a proposition HL's

safety director agrees is simply "not possible" (**EXHIBIT 2,** 57:9) – Defendants' expert's report fails to establish the requisite conditions for the defense.

In *Morris v. Crete Carrier Corp.*, CIV-04-888-T, 2006 WL 8436330, at *2 (W.D. Okla. Jan. 20, 2006), Judge Thompson opined:

> [W]hile Defendants have submitted evidence that Mr. Gentry was unaware that he had the condition of hypertrophic cardiomyopathy prior to his death and had not had the test necessary to diagnose that condition, an echocardiogram…this evidence is insufficient to show a necessary element of the defense of unavoidable accident due to a sudden medical event—that the attack of sudden unconsciousness was unforeseeable or that Mr. Gentry was not aware of any condition he had which rendered him subject to an attack of unconsciousness…Thus, the Court concludes that Defendants failed to meet their initial burden of submitting evidence establishing the essential elements of their affirmative defense and showing the absence of genuine issues of material fact concerning that defense.

The expert report here (**EXHIBIT 3**) similarly fails to establish that Milanovic did not fall asleep, that he was not distracted or that complete unconsciousness as the result of dehydration was unforeseeable.

Regardless, as discussed above, Milanovic and HL both expressly acknowledge that dehydration is something that was preventable and completely under Milanovic's control.

### **Even if Dehydration Caused the Collision, Defendants are Undisputedly Negligent**

Assuming (despite clear evidence and testimony to the contrary) that Milanovic did suffer from dehydration leading to the collision, Defendants have still acted negligently to cause the damage to the homes. Here, adopting for argument's sake, Defendants' theory that Milanovic passed out from dehydration prior to the collision, two related actions (or lack thereof) of Defendants were the cause of the collision. As admitted by Defendants, dehydration arising from insufficient fluid intake was a wholly foreseeable and preventable

7

condition. Thus, assuming Milanovic failed to stay hydrated, he was clearly negligent, and his negligent acts are imputed to his employer.

## Damages, Attorney Fees and Costs

Defendants have stipulated damages to Carr's home in the amount of $137,472.83. As this case involves property damage, attorney fees are awarded to the prevailing party. 12 O.S. § 940. The Tenth Circuit has expressly recognized that the statute is applicable in subrogation cases. *Rockwood Ins. Co. v. Clark Equip. Co., Inc.*, 713 F.2d 577, 579 (10th Cir. 1983). Plaintiff has occurred attorney fees of $ 35,405.20 through August 15, 2023. Such fees will continue to accrue during trial. Costs are also awarded to the prevailing party pursuant to Fed.R.Civ.P. 54. Plaintiff's costs are presently $3,539.41.

Respectfully Submitted,

s/ Matthew C. Kane
Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
**RYAN WHALEY, PLLC**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
Telephone:  (405) 239-6040
Facsimile:   (405) 239-6766
Email:  jerry@ryanwhaley.com
            mkane@ryanwhaley.com

*Attorneys for Plaintiff, Farmers Mutual
Fire Insurance Company of Okarche*

## CERTIFICATE OF SERVICE

☑   I hereby certify that on August 25, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Michael T. Franz, Esquire
Jeremy K. Schrag, Esquire

s/ Matthew C. Kane
For the Firm
