IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE,<br><br> Plaintiff,<br><br>v.<br><br>HL MOTOR GROUP, INC. and OGNJEN MILANOVIC,<br><br> Defendants. | Case No.:  CIV-22-752-F |

## PLAINTIFF FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE'S MOTIONS IN LIMINE

Plaintiff Farmers Mutual Fire Insurance Company of Okarche ("Farmers Mutual") hereby moves the Court to enter an Order granting the following Motions *in Limine* and prohibiting Defendants, their counsel and any fact or expert witness from offering the evidence or testimony on the issues addressed herein.

> "The purpose of a motion *in limine* is to allow the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an evenhanded and expeditious trial." "Properly filed motions *in limine* permit the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." Motions in limine "are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Limine motions "should target their arguments to demonstrating why certain items or categories of evidence should (or should not) be introduced at trial, and [they should] direct the trial judge to specific evidence in the record that would favor or disfavor the introduction of those particular items or categories of evidence."

*MCI Commc'ns Servs., Inc. v. Sadler Boring, LLC*, CIV-18-231-SLP, 2019 WL 2897482, at *1 (W.D. Okla. May 7, 2019) (citations omitted).  The instant Motions are necessary,

as they seek exclusion of evidence that is clearly inadmissible. A ruling on such issues prior to trial will prevent such issues being raised before the jury, which, even after objections are sustained, could lead to prejudice and confusion.

## BACKGROUND

This is a very straightforward case. On August 8, 2020, Defendant Ognjen Milanovic ("Milanovic") was driving a semi tractor trailer, owned by HL on the Kilpatrick Turnpike in Canadian County, Oklahoma, within the scope and course of his employment with HL. Milanovic negligently drove his truck off the highway. He slammed into two properties, homes owned by Earlene Carr and Randy Lundy.

At the time of the collision, Ms. Carr was insured under a policy of homeowners insurance issued by Farmers Mutual. Farmers Mutual has made payments to Ms. Carr under the policy in the amount of $137,472.83. Farmers Mutual has sued Defendants HL Motor Group, Inc. and Ognjen Milanovic to recover the payments made to its insured Earlene Carr for the damages caused by Defendants. The parties have stipulated as to damages. Defendants' sole defense is that of a sudden and unavoidable accident – i.e., that, pursuant to their expert, Milanovic passed out from dehydration and thus cannot be held accountable for his actions.

## MOTION *IN LIMINE* NO. 1
### PURPORTED MEDICAL PROVIDER AND FIRST RESPONDER STATEMENTS REGARDING MILANOVIC'S CONDITION

Hearsay is "a statement that the declarant does not make while testifying at the current trial or hearing…offer[ed] in evidence to prove the truth of the matter asserted in

2

the statement." Fed.R.Evid. 801(c).   Hearsay is not admissible unless expressly permitted under the law.   Fed.R.Evid. 802.

In his deposition, Milanovic makes a number of very vague statements alleging that he was told by others that he had passed out (rather than acting inattentively or falling asleep).   He concurrently states that he was confused and cannot recall specifics, never able to identify the purported declarant.   By way of example, Milanovic testified:

> A  I don't recall. I think the one at the hospital told me it was sudden loss of consciousness.   **EXHIBIT 1,** 74:14-15.
>
> A  So what they told me is that I had lost consciousness. *Id.* at 65:24-25.
>
> Q  Now let's talk about since this accident.   Have you seen any doctors or healthcare professionals to try to find out why you may have lost consciousness on the day of this accident?
> A  Well, there at the hospital they told me that it wasn't uncommon. They told me that they've dealt with it before. And I guess the scans didn't show anything serious, so, yeah, like that.
> Q  Well, when they say --
> A  They took –
> Q  When they said to you they've "dealt with it before," how did you interpret that to mean?
> A  As they've dealt with it before. They told me that a loss of consciousness wasn't entirely uncommon.   *Id.* at 68:24-69:13.
>
> Q  And can you tell us, with any degree of certainty, who at the hospital said these various things to you, "fatigue, dehydration, loss of consciousness," any of that?
> A  I really don't know. There's many nurses and doctors. I -- I don't know. I really cannot recall.   *Id.* at 117:3-9.
>
> Q  …I know you may not know their name. I respect that, but -- but, number one, did anybody say anything like that, that you had a medical condition that caused you to run off the roadway?
> A  They -- they said that it was some type of loss of consciousness. I don't know who. I don't know, again, their names. I -- I --
> Q  You don't remember their title or what they were wearing or -- or --
> A  No.

3

| | |
|---|---|
| Q | -- or anything like that? |
| A | I didn't even know why I was there. I was so confused. So, yeah, I just asked what I'm doing there anyway. So, yeah, I was just looking for answers. I didn't have time for that. I was just so confused and scared, to be honest. So, yeah. *Id.* at 117:21 - 118:11. |
| Q | And you lost consciousness as a result of this accident, didn't you? |
| A | I -- what they told me is that I was unconscious before it happened, so -- |
| Q | Now, who told you that? |
| A | The doctors and somebody -- maybe the paramedics. They told me that they saw me unconscious before it happened. |
| Q | Now, how is it possible that the paramedics -- |
| A | I -- |
| Q | -- saw you unconscious -- |
| A | I -- I'm not -- no, no, no. Sorry. There was the paramedics. There was -- I don't remember, but maybe the police. When we were talking – maybe it was with the police -- that they told me that before the incident happened, that I was stooped over the wheel. Somebody did. I don't recall whoever. It's still hazy. |
| Q | I just want to make sure that I'm clear and that this record is clear. Is it your testimony, sir, that you believe somebody told you that you were stooped over the wheel before you left the roadway? |
| A | Yes. Somebody at some point told me that. I -- I don't remember who. |
| Q | Do you know how anybody could have seen you before you left the roadway? |
| A | I think they said that somebody saw. I don't know who. I don't remember exactly. Somebody that was there. I don't know. I don't remember. It was obviously a traumatic event, so I don't recall everything. *Id.* at 69:20-71:1. |

Such statements are plainly hearsay and cannot be admitted at trial. In addition, they are highly prejudicial, lack any indicia of reliability and do not allow Plaintiff the opportunity to identify, let alone cross-examine, the purported declarants.

4

## MOTION *IN LIMINE* NO. 2
<u>SCOPE OF EXPERT TESTIMONY</u>

Under Fed. R. Civ. P. 26, an expert witness must submit a written report containing all of his opinions and what data he used to reach those conclusions. Fed. R. Civ. P. 26(a)(2)(B)(I)-(vi). A court will bar information not disclosed in a Rule 26 report. *Cohlmia v. Ardent Health Services,* 254 F.R.D. 426,430 (N.D. Okla. 2008). The law clearly states that this barred information includes expert witnesses testifying at trial. *Crawford v. Muscletech Research & Dev. Inc.,* 2002 WL 31852844 at *1 (W.D. Okla., Oct. 4, 2002) ("[w]ithout question, the Court will not permit an expert witness to offer an opinion not previously disclosed."); *see also, Wiederstein v. Wal-Mart Stores, Inc.*, CIV-21-1047-J, 2022 WL 17175423, at *1 (W.D. Okla. Sept. 20, 2022) (expert "testimony will be limited to the opinions set forth in his…expert report, his…supplemental report, and any other supplemental report timely provided to Plaintiff prior to trial"); *Smith v. CSAA Fire & Cas. Ins. Co.*, CIV-17-1302-D, 2020 WL 3146826, at *2 (W.D. Okla. June 12, 2020), *report and recommendation adopted, Smith v. CSAA Fire & Cas. Ins. Co.*, CIV-17-1302-D, 2020 WL 4340546 (W.D. Okla. July 28, 2020) (granting motion to limit expert testimony to report). In fact, the Tenth Circuit has ruled that admitting testimony beyond the opinions beyond the opinions an expert expressed in his written report may be grounds for a new trial. *Means v. Letcher,* 51 Fed. Appx. 281, 283-84 (10th Cir. 2002).

In the present case, Plaintiff chose not to depose Defendants' principal expert David J. Fletcher, because Plaintiff did not want to allow him to expand his testimony at trial. Fletcher's expert report, issued on March 27, 2023, concludes that the accident occurred as

a result of severe dehydration, which caused Milanovic to pass out at the wheel. **EXHIBIT 2.** The report has serious flaws, and Fletcher has never corrected those mistakes or supplemented his report. He is now bound by his report and may not exceed the scope of that report in his trial testimony. However, shortly after Fletcher issued his report, HL Group's corporate representative was deposed. On behalf of the corporate defendant, the deponent repeatedly admitted that it was not possible for the accident to have been caused by Milanovic's dehydration. **EXHIBIT 3,** 56:18-57:9; 58:4-13; 58:22-59:11. In addition, he admitted that dehydration is wholly foreseeable and preventable. *Id.* at 49:18-25; 50:22-25; 51:13-23; 53:2-11; 53:25-54:16; 62:24-63:4. He went so far as to say that if Milanovic were "dehydrated to the point of losing consciousness, the accident would have been his fault." *Id.* at 69:1-2.

Given such concessions, Plaintiff anticipates that Defendants will attempt to expand the scope of their expert's trial testimony beyond the scope of his expert report previously submitted in this case. Defendants' expert may only testify at trial about opinions, and the factual bases of the opinions, he has previously disclosed. No exceptions to that rule exist in the present case. Accordingly, Plaintiff requests this Court to make clear to Defendants that their expert's testimony will be limited to the scope of his expert report.

### MOTION *IN LIMINE* NO. 3
*THE SIZE AND FINANCIAL CONDITION OF PLAINTIFF*

Plaintiff respectfully moves for an order precluding at trial any evidence, statement, or argument that it is a "large" and/or "huge" (or other similar words) company or any

similar comment that may draw on prejudices of the jury. Such evidence is irrelevant, confusing, misleading, and unduly prejudicial.

The United States Supreme Court has indicated that an undue emphasis on size and wealth can result in an improper verdict. *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 464 (1993) ("emphasis on the wealth of the wrongdoer increased the risk that the award may have been influenced by prejudice against large corporations, a risk that is of special concern when the defendant is a nonresident."). Moreover, Plaintiff is standing in the shoes of its insured to seek recovery from the party at fault. *Republic Underwriters Ins. Co. v. Fire Ins. Exch.*, 1982 OK 67, ¶ 6, 655 P.2d 544, 546; *Aetna Cas. & Sur. Co. v. Associates Transports, Inc.*, 1973 OK 62, ¶ 11, 512 P.2d 137, 139; *Commercial Union Fire Ins. Co. v. Kelly*, 1964 OK 34, ¶ 16, 389 P.2d 641, 644; *Steadfast Ins. Co. v. Agric. Ins. Co.*, 475 Fed. Appx. 683, 688 (10th Cir. 2012), *certified question answered, Steadfast Ins. Co. v. Agric. Ins. Co.*, 2013 OK 63, 304 P.3d 747. In short, Plaintiff's size or financial condition has nothing to do with its right of recovery.

Accordingly, this Court should exclude any evidence, reference to, or characterization of Farmers Mutual as a large or profitable insurer. This evidence is irrelevant to the claims in this case. Moreover, the only reason that counsel would attempt to present this evidence is to suggest that Plaintiff should receive disparate treatment merely because of its residency or financial wherewithal.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests the Court grant the instant Motions *in Limine*.

Respectfully submitted,

/s/ Matthew C. Kane
Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
**RYAN WHALEY, PLLC**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
Telephone:   (405) 239-6040
Facsimile:    (405) 239-6766
Email:    jerry@ryanwhaley.com
             mkane@ryanwhaley.com

*Attorneys for Plaintiff, Farmers Mutual Fire Insurance Company of Okarche*

## CERTIFICATE OF SERVICE

☑    I hereby certify that on August 25, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Michael T. Franz, Esquire
Jeremy K. Schrag, Esquire

/s/ Matthew C. Kane
For the Firm