IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE,<br><br>      Plaintiff,<br><br>v.<br><br>HL MOTOR GROUP, INC. and OGNJEN MILANOVIC,<br><br>      Defendants. | Case No.:  CIV-22-752-F |

**PLAINTIFF FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE'S RESPONSES AND OBJECTIONS TO DEFENDANTS' MOTIONS IN LIMINE**

Plaintiff Farmers Mutual Fire Insurance Company of Okarche ("Farmers Mutual") respectfully submits the instant Responses and Objections to Defendants' Motions in Limine. (Doc. 37).

### "Medical Testimony" by Trooper Linzy

Farmers Mutual does not intend to solicit information from Trooper Linzy regarding "medical testimony" (or, more broadly stated, ultimate issues of causation) – i.e., that Milanovic fell asleep or that specific actions suggest Milanovic fell asleep. As noted in *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 890 (10th Cir. 2006), lay witness testimony of investigating officers should be limited to the perceptions of the witness that are helpful to the jury. As explained in *Deela v. Annett Holdings, Inc.*, CIV-17-483-KEW, 2019 WL 7605826, at *1 (E.D. Okla. Nov. 8, 2019):

The troopers will be permitted to testify as to their observations at the scene and their factual findings based upon those observations. Their opinions regarding causation, however, will be excluded since it would be "no more than speculation based upon the same facts that the jury [would have] before it." *Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 889-90 (10th Cir. 2006).

Here, for example, Trooper Linzy will testify:

1. Trooper Linzy will testify regarding the factual information arising from his investigation. For instance, he will address where the semi left the road, how far it travelled, contact with fences, vehicles, trees and buildings.
2. He will also testify regarding steering and braking input that occurred after initial impact, including the fact that the semi-trailer was steered towards an apparent gap between the houses.
3. Trooper Linzy can corroborate Mr. Milanovic's inability to recall, thus countering his claim that he did not fall asleep.

*See* Incident Report and Affidavit of Trooper Wayne Linzy, attached as **EXHIBITS 1 & 2**. These factual findings based on observations are plainly admissible. Thus, Defendants' Motion in Limine should be denied.

### "Medical Testimony" by HL Motor

Defendants also seek to prohibit what they claim is "medical testimony" from HL's corporate representative Alexander Saitov. For instance, they claim – against all common sense – that "Mr. Saitov has no knowledge of what causes the medical condition of dehydration or whether dehydration is foreseeable." Defendants' Motion in Limine, at 7. However, Defendants cannot convert general knowledge to that requiring medical expert testimony because they say so.

Preliminarily, what Mr. Saitov might or might not know is irrelevant, as the deposition is that of the corporation. In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation. The Rule 30(b)(6) designee does

not give his personal opinion. Rather, he presents the corporation's "position" on the topic. The designee testifies on behalf of the corporation and thus holds it accountable. *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.,* 839 F.3d 1251, 1256 (10th Cir. 2016). As a result, the question is not whether Mr. Saitov is qualified to testify on a subject or has his own personal knowledge, but whether the company does.

Here, Plaintiff issued a corporate subpoena to HL which sought testimony regarding, among other issues, "the factual basis for this Defendant's first affirmative defense of unavoidable accident" and "all evidence that support this Defendant's position that Ognjen Milanovic suddenly lost consciousness while driving a Highlight tractor trailer on August 8, 2020." Notice, **EXHIBIT 3**. HL did not object to these categories and subsequently offered Mr. Saitov to testify as to these very issues. HL cannot now complain that Mr. Saitov's testimony should be disallowed because he was not adequately prepared.

Regardless, HL did not offer "medical testimony." It provided testimony based on the experience of its employees (namely Mr. Saitov) that reflect the basic understanding that we must consume water as a part of daily life, and, more particularly, that it is a safety issue contemplated by the company. For example, Saitov testified on behalf of the company:

> Q   Sir, I am simply asking you, as the safety – vice-president of safety for this company, is dehydration a concern or not?
> A   It is a concern.
> Q   Okay. And is it a concern because HL Motor Group is aware of the concept or the prevalence of drivers being affected negatively by dehydration, in their performance and operation of motor vehicles?
> A   We are aware. 45: 9-17.

> A You know, I am aware of various risks that pose dangers for our drivers, not only about dehydration, but about other risks, as well… 45:19-21.
>
> Q [D]o you believe, in your experience in life and as the safety manager for this company, that it's possible for a person to succumb to dehydration at such a fast rate, that the very first sign of a problem was the loss of consciousness?
> A Sir, for all of my experience, and I think I've had a relatively large experience with a large number of accidents, I never, ever observed weakness that dehydration played any such role.
> Q In causing a driver to lose consciousness and have a collision?
> A Yes. Corporate Representative Transcript, **EXHIBIT 4**, 58:25-59:11.

Defendants specifically contend that HL should not be able to testify that dehydration is a self-induced preventable condition.[1] Again, this defies all logic, as every layperson knows that drinking sufficient water prevents dehydration. Defendants' position is tantamount to contending that a doctor's testimony is necessary to establish that we need air to breathe or food to eat. HL's repeated acknowledgement that dehydration is preventable is directly relevant to its liability here. For example, a jury is entitled to hear:

> Q All right. And do you agree that an extreme level of dehydration would be a preventable circumstance by the driver?
> A I would agree.
> Q If a person had dehydration to the extent that they lost consciousness, you would agree that would be preventable by the truck driver?
> A I would agree. *Id.* at 49:18-25.
>
> Q And I think you have already said this, but just to be clear, do you agree that dehydration is 100 percent avoidable?
> A Dehydration is 100 percent avoidable, yes. *Id.* at 50:22-25.

---

[1] Defendants also contend that Mr. Saitov should not be allowed to testify "it was not possible that Mr. Milanovic had no symptoms of dehydration until he lost consciousness." Motion at 6. This appears to be a "strawman" argument. Defendants do not cite any deposition testimony that reflect HL making such a statement, and Plaintiff is not aware of such statements. Thus, Plaintiff cannot engage in a debate of the propriety of such testimony.

4

| | |
|---|---|
| Q | That's my question to you. If the driver becomes dehydrated and that's the reason he lost consciousness, that is a self-induced medical condition; agree? |
| A | Agree. |
| Q | Entirely preventable by the driver? |
| A | Absolutely preventable. *Id.* at 53:7-13. |
| | |
| A | Again, given all – if – if the loss of consciousness is caused by dehydration, then, yes. *Id.* at 63:3-4.[2] |

While Defendants focus on the issue of dehydration as "a self-induced preventable condition," HL also testifies that Milanovic had access to water and the option to stop as needed. *Id.* at 44:4-6; 58:17-21; 68:19-22. And, given HL's position regarding foreseeability of dehydration, it also acknowledges that the driver is responsible for staying hydrated.

| | |
|---|---|
| Q | So, then, is it HL's position that proper hydration for its drivers is solely the responsibility of the truck driver? |
| A | It is obviously a responsibility of the truck driver. But, again, what HL does, it enforces hours of service policy, requiring drivers to take rest breaks, specifically for theirs needs of drinking water, eating properly, and other issues relating to their health and well-being. *Id.* at 50:8-16. |
| . | |
| Q | Sure. A driver is responsible for ensuring that he or she is properly hydrated at all times to avoid any negative health consequences of the dehydration, that might impair the ability to drive? |
| A | Agree. *Id.* at 51:13-17. |
| Q | I think you would agree, that to the extent that Mr. Milanovic was – was feeling fatigued or dehydrated, he had ample opportunity to remedy that situation, so that he could perform at his physical and mental best and not lose consciousness and run off the roadway? |
| A | I would agree that he had ample opportunity to drink water, eat properly, and feel well, which I believe he did. And I don't see any reasons why he wouldn't. |
| Q | So, therefore, if he was dehydrated to the point of losing consciousness, if that's what occurred, the accident would be entirely his fault; agree? |

---

[2] In addition, Milanovic makes the same admissions regarding the preventability of dehydration. *See e.g.,* Milanovic Transcript, **EXHIBIT 5**, 114:14-20; 116:13:19.

      A      If he dehydrated to the point of losing consciousness, the accident would have been his fault. *Id.* at 68:13-69:2.

Given the limited objections raised by Defendants in their Motion, it appears that such testimony is not contested.

Regardless, Defendants' efforts to prevent HL from testifying regarding the preventability of dehydration, the impossibility that it caused the accident and any related testimony is admissible and Defendants' Motion should be denied.

## Medical Articles

Defendants are confusing two separate issues in their Motion in Limine regarding medical articles. As noted by Defendants, Plaintiff has not listed and does not intend to utilize the National Kidney Foundation and WebMD articles as exhibits in the instant litigation. However, Plaintiff is certainly entitled to cross-examine Defendant's expert with information contained in relevant medical literature. *See e.g., Poche v. Joubran*, 07-CV-213-B, 2009 WL 10695196, at *1 (D. Wyo. Mar. 10, 2009) ("Counsel may utilize this literature during cross-examination, they may read passages from this literature, etc. However, it will not be admitted as an exhibit."); Fed.R.Evid. 803(18). Thus, Defendants' Motion in Limine should be denied.

Respectfully submitted,

/s/ Matthew C. Kane
Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
**RYAN WHALEY, PLLC**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
Telephone:  (405) 239-6040
Facsimile:   (405) 239-6766
Email:   jerry@ryanwhaley.com
             mkane@ryanwhaley.com

*Attorneys for Plaintiff, Farmers Mutual
 Fire Insurance Company of Okarche*

## CERTIFICATE OF SERVICE

☑     I hereby certify that on August 25, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Michael T. Franz, Esquire
Jeremy K. Schrag, Esquire

/s/ Matthew C. Kane
For the Firm